UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | Case No. 1:13-CR-91-BLW |
| v. | **MEMORANDUM DECISION AND ORDER** |
| DOUGLAS L. SWENSON, et al., | |
| Defendants. | |

## INTRODUCTION

The Court has examined *in camera* certain materials submitted by the Government. The defendants have requested access to all the material. In this decision, the Court will determine what evidence the defendants are entitled to view.

## ANALYSIS

FBI Agent Rebekah Morse testified for the United States on March 18 and 19, 2014. On March 19, 2014, during a recess, a juror commented to the Court's Law Clerk that Agent Morse was texting while on the witness stand during the time the Court and counsel were occupied at a sidebar conference. When questioned by the Court about this concern of the juror, Agent Morse denied texting. She explained that during her testimony, her phone vibrated, and to turn it off she claimed that she had to first enter her password. That explanation satisfied counsel and the Court. To resolve the one juror's expressed concern – and to address any unexpressed concerns by other jurors – the Court

instructed the jury that Agent Morse was just turning off her cell phone by first punching in her password.

The trial then proceeded forward with further cross examination of Agent Morse. But during that cross examination, the Court reflected further on the matter and became concerned that the juror had expressed her concern in such a way as to suggest that Agent Morse may have texted on more than one occasion. Agent Morse's explanation about turning off her cell phone on one occasion did not address the possibility that she might have been texting on two or three occasions. After conferring with counsel, and with their approval, the Court advised Agent Morse of a potential inconsistency in her testimony and took possession of her cell phone. Agent Morse was to return for further testimony the next day, March 20, 2014. Tragically, she was found dead the morning of March 20, 2014, of a self-inflicted gunshot wound.

The Court subpoenaed the text records and the e-mails taken from the cellphone of Agent Morse for the dates of March 18, 2014, through and including March 19, 2014. The Court has now received those records and thoroughly examined them – they contain the contents of all texts and e-mails sent and received by Agent Morse on those two days. The Court has also examined (1) the FBI's 302 Report of FBI Agents' interview with Agent Wyand who had interviewed Agent Morse during the evening of March 19, 2014; (2) what appears to be a note written by Agent Morse and found at her home on March 20, 2014; and (3) notes of IRS Special Agent Josh Culbertson on March 19, 2014, when members of the prosecution team met with Agent Morse.

With regard to the text and e-mail messages, the Court compared the times they were sent (or received) to the times provided (to the second) by the Real-Time transcript of the court proceedings. The only times that Agent Morse texted while on the witness stand were during a sidebar held on March 19, 2014. The sidebar was held from 12:02:47 to 12:10:41 p.m., and during that sidebar, Agent Morse sent 4 text messages and received 4 text messages. At no other time during a sidebar on March 18th or 19th did Agent Morse send any text messages or e-mails.

There were three additional times when text messages were received while Agent Morse was testifying. However, the text messages appear to be of a personal nature and the information provided does not permit the Court to conclude whether the received messages were actually viewed by Agent Morse while she was testifying. The Court has also reviewed the Verizon records that confirm that the Government has provided the entire texts and e-mails from March 18 and 19, 2014.

The defense asks the Court to turn over all the material submitted by the Government for *in camera* inspection pursuant to the Jencks Act, Rule 16, and *Brady v. Maryland,* 373 U.S. 83 (1963). Under *Brady,* the defense is entitled to see evidence that is favorable to the defendants and is material to guilt or innocence. *Id.* at 87. This extends to evidence that bears upon the credibility of a government witness. *Giglio v. United States*, 405 U.S. 150, 153–54 (1972). Impeachment evidence is especially likely to be "material," under Brady, when it impugns the testimony of witness who is critical to prosecution's case. *Silva v. Brown,* 416 F.3d 980, 986 (9th Cir. 2005).

There is no doubt that Agent Morse was a critical witness for the Government. Nevertheless, some of the texts and e-mails examined by the Court are clearly not material because they were sent or received during times that Agent Morse was not on the witness stand and they have nothing to do with the substance of her testimony. Those texts and e-mails are clearly not *Brady* material. On the other hand, the text messages that were sent and received during the time Agent Morse was on the witness stand have potential use in impeaching Agent Morse's testimony and must therefore be disclosed under *Brady*.

After a full *in camera* review, the Court finds that the following material should be submitted under *Brady*: (1) the 302 Report; (2) the note apparently written by Agent Morse found at her home on March 20, 2014; and (3) those text messages referred to above that were sent and received while she was on the witness stand on March 19, 2014. None of this material – and none of the texts and e-mails not included in the material being turned over to the defense – are otherwise discoverable under the Jencks Act (18 U.S.C. § 3500) or Rule 16.

The Court will also turn over to both sides the court security video tapes of the courtroom proceedings during the days in question. These videos are being released on the Court's own initiative and are not required pursuant to *Brady,* the Jencks Act, or Rule 16. They will be provided separately.

The Court will turn this material over to the defense with direction to counsel to not distribute it further unless approved by order of this Court. This decision and the associated material were originally filed under seal because (1) some of the materials

contain personal identifying information that must not be disclosed to the public under the E-Government Act, and (2) the materials may contain sensitive information not proper for public disclosure. The Court has now unsealed the decision for the reasons expressed in a contemporaneous Docket Entry Order.

**ORDER**

In accord with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the following material shall be delivered by the Government to the defense counsel: (1) the FBI's 302 Report of Agent Scata's interview with Agent Wyand who had interviewed Agent Morse during the evening of March 19, 2014; (2) what appears to be a note written by Agent Morse found at her home on March 20, 2014; (3) the Court's redacted version of the texts for March 19, 2014; (4) court security video tapes of the courtroom proceedings on the days at issue (to be provided separately by the Court).

IT IS FURTHER ORDERED, that counsel shall not distribute the material any further without approval from this Court.

DATED: March 25, 2014

B. Lynn Winmill
Chief Judge
United States District Court

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry  03/23/2014

Pursuant to an Agent-involved shooting which occurred in Boise, Idaho, on 03/20/14, Assistant Inspector (AI) Timothy R. Weir and Assistant Inspector-in-Place (AIIP) John W. Scata interviewed Supervisory Senior Resident Agent (SSRA) Ernst H. Weyand of the Salt Lake City Field Office. After being advised of the purpose of the interview and the identities of the interviewing Agents, SSRA Weyand provided the following information:

SA Rebekah Morse was working on the Diversified Business Services and Investments (DBSI) trial for months and on Tuesday (03/18/14) her testimony began. The nature of her testimony involved IRS documents which were presented to the Grand Jury which gave the defense an opening to suggest the overall investigation was shoddy. SA Morse was questioned by the defense on parts of the investigation which she had not seen. The defense team implied the investigation was incomplete which forced SA Morse to respond with numerous "I don't know" answers. It was tough testimony.

SA Morse's last day of testimony was on Wednesday (03/19/14). SSRA Weyand was at a field training exercise when he received a call from SA Morse. SA Morse called from her residence and asked SSRA Weyand if the AUSA on her case, Raymond Patricco, had contacted him. After advising Patricco had not contacted him, SA Morse informed SSRA Weyand a juror contacted the court clerk and claimed SA Morse was texting during a sidebar while on the stand. The Judge (US District Court of Idaho Judge Winmill) then asked SA Morse if she was texting. SA Morse advised she was not texting. Her phone beeped and she entered her code to turn it off. It was later determined the juror may have said to the clerk SA Morse was texting on multiple occasions during the trial. At that point, court was stopped for the day and the judge advised there was a question if SA Morse had perjured herself. SA Morse was told to go home and AUSA Patricco advised her she may need an attorney. (It should be noted phones were allowed in the courtroom in the State of Idaho.)

After this conversation, SSRA Weyand contacted Aaron Lucoff, Criminal Chief for the USAO for the District of Idaho, who informed him they were getting the court transcript. Criminal Chief Lucoff asked SSRA Weyand to come to the Boise Federal Courthouse so he could review the transcript with the prosecution team. This meeting occurred, at approximately 4:30 pm, on

Investigation on  03/21/2014  at  Boise, Idaho, United States (In Person)

File #  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓  Date drafted  03/23/2014

by  SCATA JOHN W

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

**Memorandum Decision & Order – page 6**

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of  Interview of SSRA Ernst Weyand  , On  03/21/2014  , Page  2 of 4

Wednesday afternoon. SSRA Weyand also contacted his CDC to determine what the process was if SA Morse did need an attorney. During this meeting, the USAO expressed their support for SA Morse.

After the meeting at the USAO, SSRA Weyand went to SA Morse's home to talk with her. This was at approximately 5:45 pm. SSRA Weyand advised SA Morse he supported her and so did the USAO. He also told SA Morse how AUSA Patricco indicated she was the best FBI Agent he had ever worked with. SSRA Weyand provided a copy of the court transcript to SA Morse and let her review it while he talked with her husband. The intent of the review was to determine if SA Morse thought she needed legal advice or counsel. SSRA Weyand thought SA Morse seemed relieved after reviewing the transcript because it seemed to confirm what the judge was asking – texting during a sidebar immediately preceding the judge's inquiry.

SA Morse told SSRA Weyand she believed the judge was referring to an incident just before the court recessed for lunch. During this incident, SA Morse's phone was vibrating while she was testifying. During a subsequent sidebar, she pulled out her phone and entered her pass code two times because her first attempt failed. She placed her phone in a mode in which it would not receive incoming calls or text messages. SA Morse told SSRA Weyand she may have sent a text message during a sidebar earlier in the day, but she could not specifically recall this. She acknowledged she sent text messages during scheduled court recesses and breaks. SA Morse also said she did not need a lawyer and would consent for the judge to look at her phone to see she was not texting during the sidebar she thought the judge was referencing. SSRA Weyand advised SA Morse this was a "hiccup" and not a big problem. He also told SA Morse he would contact Criminal Chief Lucoff and AUSA Patricco regarding the matter and then let her know how they were going to proceed.

SSRA Weyand contacted Criminal Chief Lucoff who, in turn, called AUSA Patricco. AUSA Patricco contacted SSRA Weyand a short time later and advised he was trying to schedule a closed hearing with the judge for the next morning and SSRA Weyand should be prepared to testify. AUSA Patricco also indicated SA Morse should be at the courtroom. Following this conversation, SSRA Weyand contacted SA Morse and told her where things stood. The conversation was good and SA Morse seemed to understand this was not a big issue. SSRA Weyand also advised SA Morse the issue would not impact the case so she should not worry about it. He ended the conversation by saying "I'll see you at 8:15".

The next morning

**Memorandum Decision & Order – page 7**

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of  Interview of SSRA Ernst Weyand  , On  03/21/2014 , Page  3 of 4

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of  Interview of SSRA Ernst Weyand              , On  03/21/2014 , Page  4 of 4

**Memorandum Decision & Order – page 9**

[redacted – note found at Agent Morse's home on March 20, 2014]

| log_type | event_date1 | bb_owner | event_type | raw | TO_FROM_name | field_name | Timing | body |
|---|---|---|---|---|---|---|---|---|
| SMS-Phone | 3/19/14 3:11:03 PM | Morse, Rebekah E. | Incoming | | | From | On Stand | Let me know when you're done |
| SMS-Phone | 3/19/14 4:52:16 PM | Morse, Rebekah E. | Incoming | | | From | On Stand | Well tell Calif to hurry up because im all dressed and ready to come and watch once you are done! Love you |
| SMS-Phone | 3/19/14 4:52:36 PM | Morse, Rebekah E. | Incoming | | | From | On Stand | Tell Calif* |
| SMS-Phone | 3/19/14 6:03:23 PM | Morse, Rebekah E. | Outgoing | | | To | Sidebar | Still on the stand |
| SMS-Phone | 3/19/14 6:04:17 PM | Morse, Rebekah E. | Incoming | | | From | Sidebar | Does he seem like he's wrapping up? |
| SMS-Phone | 3/19/14 6:04:34 PM | Morse, Rebekah E. | Outgoing | | | To | Sidebar | Nope never going to end |
| SMS-Phone | 3/19/14 6:04:48 PM | Morse, Rebekah E. | Incoming | | | From | Sidebar | I want to bring you a coffee and watch once you're done |
| SMS-Phone | 3/19/14 6:05:25 PM | Morse, Rebekah E. | Outgoing | | | To | Sidebar | Ok I will let you know |
| SMS-Phone | 3/19/14 6:05:39 PM | Morse, Rebekah E. | Incoming | | | From | Sidebar | How is it going, did you tell him you were strengthening your pimp hand? |
| SMS-Phone | 3/19/14 6:06:08 PM | Morse, Rebekah E. | Outgoing | | | To | Sidebar | Well I fucked up once I will get reemed for it I'm sure |
| SMS-Phone | 3/19/14 6:07:06 PM | Morse, Rebekah E. | Incoming | | | From | Sidebar | They'll fix it on redirect stop worrying so much |