UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | Case No. 1:13-CR-91-BLW |
|---|---|
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| DOUGLAS L. SWENSON, et al., | |
| Defendants. | |

## INTRODUCTION

"A criminal trial does not unfold like a play with actors following a script; there is no scenario and can be none. The trial judge must meet situations as they arise and to do this must have broad power to cope with the complexities and contingencies inherent in the adversary process."

*Geders v. U.S.,* 425 U.S. 80, 86 (1976).

The trial in this case took a tragic turn when the lead FBI investigator, Special Agent Rebekah Morse, took her life the day after she had testified. During Special Agent Morse's testimony, at least one juror had seen her texting during a sidebar. When confronted by the Court under oath outside the jury's presence, Special Agent Morse denied texting and explained that she was merely turning off her phone. At the request of the Government, the Court instructed the jury that she was not texting but was merely turning off her phone. But after reflecting on an inconsistency between the juror's comment and Special Agent Morse's testimony, the Court took possession of her phone and directed her to return the next day to sort out this issue. A later examination of her

phone showed that during one sidebar while she was on the witness stand, she was texting with her husband. Special Agent Morse did not return the next morning and was found dead of a self-inflicted gunshot wound.

Her death was devastating. A storm of emotion broke over all involved in this trial and drove the proceedings into uncharted waters. Her answers to the Court's inquiry will now never be explained. The jury has been instructed that what they saw with their own eyes – texting – did not occur, when in fact it did occur. The Court must correct that inaccurate instruction. The Court must also determine how far it will go in recognizing the defendants' rights under the Confrontation Clause to impeach a key Government witness while at the same time avoiding the morass of a mini-trial over text messages.

In this decision, the Court will (1) set forth a curative jury instruction; (2) explain why it selected this curative instruction; and (3) set forth boundaries on the evidence that will be allowed concerning the texting issue.

## ANALYSIS

### Curative Instruction

The Court decided, for the reasons explained below, to give the following curative instruction:

> I previously gave you an instruction relating to whether FBI Special Agent Rebekah Morse was texting while on the witness stand during a sidebar. You should now disregard my prior comments and my instruction on this issue.
> The Court inquired of Special Agent Morse under oath about texting during a sidebar, and she stated that she was turning off her phone and was not texting. It has now been determined that Special Agent Morse sent four text messages and received four text messages during a sidebar. The text

> messages were between her and her husband. You may consider these facts in assessing Special Agent Morse's credibility.

For the record, the Court issues the following opinion explaining its decision.

**Background**

FBI Special Agent Rebekah Morse testified for the United States on March 18 and 19, 2014. On March 19, 2014, during a recess, a juror commented to the Court and the Court's Law Clerk that Special Agent Morse was texting while on the witness stand during the time the Court and counsel were occupied at a sidebar conference.

Implicit in the juror's comment was a troubling possibility: If that juror – and perhaps others – had seen Special Agent Morse texting during a sidebar, they may believe she was being coached or otherwise assisted during her testimony. The juror's comment could not be ignored.

It was also important that the juror's observation was at least hypothetically plausible. Special Agent Morse's testimony during the two hour session which preceded the recess had been interrupted four times for sidebar conferences. During those conferences, the jury remained in the jury box and Special Agent Morse remained on the witness stand, while counsel huddled with the Court at the far end of the bench. During the sidebar, the jury had an unobstructed view of the witness; the closest juror is about 10 feet or so from the witness stand. The Court and counsel were occupied with legal arguments and not paying attention to the witness. Thus, the juror's observation could not be dismissed out-of-hand.

Recognizing the importance of this issue, the Court immediately advised counsel through the Court's Law Clerk, and asked them for their input. The parties agreed the Court could inquire of Special Agent Morse concerning the issue, and the Court decided to ask her about the texting.

The Court's questioning of Special Agent Morse took place immediately after the recess where the concern was raised by the juror and about 30 minutes after the fourth and final sidebar that preceded the recess. The third sidebar had taken place about 50 minutes earlier; the second sidebar nearly 2 hours earlier; and the first sidebar about 2.5 hours earlier. With that background, the following colloquy took place outside the presence of the jury:

> THE COURT: Counsel, we are convening outside the presence of the jury. One of the jurors stopped us in the hallway and commented that the juror had observed the witness to be on a texting -- appeared to be -- the word I think the juror used was "texting" while we were at a sidebar. I think we need to get to the bottom of that immediately. And the fact that a juror noticed it obviously makes it of some significance. I don't know precisely how you want to proceed, but perhaps we need to at least hear from Ms. -- from Special Agent Morse as to exactly what occurred and then maybe go from there. I -- Mr. Patricco, do you want to handle that first and then --
> MR. PATRICCO: That's fine, Your Honor. I believe Special Agent Morse can simply explain what happened.
> THE COURT: All right. Special Agent Morse, can you --
> THE WITNESS: I noticed during one of the questions while before when you were at sidebar, my phone actually buzzed, so I just went, while you were at sidebar, to shut it off just to ensure that it didn't distract me or make any noise while it was on my side.
> THE COURT: And there was no texting?
> THE WITNESS: No. No. I just went to shut it off. I mean, it takes a second because there is a password so you have to type it in, the password, in order to get into, so that may have been what they thought, but I wasn't texting. I just had to shut it off.
> THE COURT: But under oath, you are saying that you were not communicating using a text feature --

THE WITNESS: No.
THE COURT: -- of the iPhone with anyone?
THE WITNESS: No.
THE COURT: Okay. Defense counsel, do you want to –
MR. ROBINSON: I think that explanation --
MR. CALFO: Your Honor, I'm fine with just leaving it as it is and just not doing anything at all.
MR. PATRICCO: No, Your Honor. I think we would prefer to just have the court tell the jury that she was turning her phone off. We don't --
THE COURT: Well, I think if -- unless there is a dispute about that, I think the jury does need to know what occurred because it was troubling to them, and I think I will need to take that. If the defense has any concerns about whether that's what occurred, then, of course, you can inquire further of Special Agent Morse, but if there is no dispute about that, I think the jury does need to be so instructed.

At this point, the jury was returned to the courtroom. The Government requested that the Court tell the jury that Special Agent Morse was not texting but simply turning off her phone. The Court granted the Government's request and instructed the jury as follows:

> An issue came up and one of the jurors brought it to our attention, very appropriately, that she was concerned that perhaps Special Agent Morse had been texting while on the witness stand while we were at sidebar. An inquiry was made, and the Court is satisfied that what occurred was that perhaps Special Agent Morse didn't get the email, so to speak, about turning off your cell phone before coming into Court, and it may have vibrated. It was on vibrate, so she had to enter a code to turn it off. And I think that's what occurred.

After that instruction was given, defense counsel continued their cross-examination of Special Agent Morse. But during that cross examination, the Court reflected further on the matter and became concerned that the juror had expressed her concern in such a way as to suggest that Special Agent Morse may have texted on more than one occasion. Special Agent Morse's explanation about turning off her cell phone on one occasion did not address the possibility that she might have been texting on two or

**Memorandum Decision & Order – page 5**

three occasions. After conferring with counsel, and with their approval, the Court advised Special Agent Morse of a potential inconsistency in her testimony and took possession of her cell phone. The defense reserved its right to recall Special Agent Morse, and the Court wanted to inquire further, so she was directed to return for further testimony the next day, March 20, 2014. Tragically, she was found dead the morning of March 20, 2014, of a self-inflicted gunshot wound.

The Court subpoenaed the text records and the e-mails taken from the cellphone of Special Agent Morse for the dates of March 18, 2014, through and including March 19, 2014. The Court received those records and thoroughly examined them – they contain the contents of all texts and e-mails sent and received by Special Agent Morse on those two days.

With regard to the text and e-mail messages, the Court compared the times they were sent (or received) to the times provided (to the second) by the Real-Time transcript of the court proceedings. The only times that Special Agent Morse texted while on the witness stand were during the third sidebar held on March 19, 2014. The third sidebar was held from 12:02:47 to 12:10:41 p.m., and during that sidebar, Special Agent Morse sent 4 text messages to her husband and received 4 text messages from him. In the messages, Special Agent Morse is complaining about being "[s]till on the stand" and how her testimony is "never going to end." When her husband asks, "How is it going?" she responds, "I fu---- up once I will get reemed for it I'm sure." Her husband responds by urging her to "stop worrying so much." At no other time during any sidebar on March 18th or 19th did Special Agent Morse send any text messages or e-mails.

There were three additional times when text messages were received while Special Agent Morse was testifying. But no party is arguing that any mention should be made to the jury of these three text messages. The Court has also reviewed the Verizon records that confirm that the Government has provided the entire texts and e-mails from March 18 and 19, 2014.[1]

Following Special Agent Morse's death, the Court anticipated extensive coverage in the press. Consequently, the Court strongly admonished the jury to avoid watching or listening to any media. The press coverage was extensive, and thereafter, the Court inquired, on the record, of each juror to determine if they had obeyed the Court's admonishment. The jurors were all obedient, but three of them recounted that acquaintances had blurted out short comments before they could be stopped. All three jurors satisfied the Court and counsel that they could put those comments out of their mind, and had not – and would not – discuss them with other jurors.

**Proposed Instructions by the Parties**

The parties all agree that the Court should instruct the jury to disregard its earlier instruction that Special Agent Morse was simply turning off her phone. But they cannot agree on the rest of the curative instruction.

---

[1] In a prior decision, the Court explained its decision to release the following materials to counsel: (1) the FBI's 302 Report of Agent Scata's interview with Agent Wyand who had interviewed Special Agent Morse during the evening of March 19, 2014; (2) what appears to be a note written by Special Agent Morse found at her home on March 20, 2014; (3) the Court's redacted version of the texts for March 19, 2014; and (4) court security video tapes of the courtroom proceedings on the days at issue.

The Government originally proposed two alternative instructions. The first is short and simple: It refers to the prior instruction and states that "I need to correct my instruction to you." It then states that the jury may consider the demeanor of a witness, and that "[a]s a part of demeanor, you may consider turning off the phone or typing into it." Their proposed instruction leaves it up to the jury to determine if Special Agent Morse was texting and, if so, how that would affect her credibility.

Their second alternative takes a slightly different approach but is identical in purpose. After quoting the prior instruction, it states that the jury should "disregard that instruction." It then instructs the jury once again to observe the demeanor of the witness to determine what she was doing on the witness stand.

The defense offered two alternative instructions as well. The first (1) asks the jury to "disregard my earlier instruction," (2) instructs them that the Court will provide them with a transcript of the Court's questioning of Special Agent Morse and a text log from Special Agent Morse's cell phone, and (3) advises the jury that "[y]ou may consider this information as it bears on Special Agent Morse's credibility."

As an alternative, the defense proposes to instruct the jury that Special Agent Morse "sent and received a total of four text messages during a sidebar on March 19, 2014, contrary to her testimony under oath to the Court. You may consider these facts in assessing Special Agent Morse's credibility."

**<u>Analysis of Proposed Instructions</u>**

To instruct the jury that Special Agent Morse acted "contrary to her testimony under oath to the Court" – as the defense urges – would have the Court make a credibility

finding.  The Court declines this invitation because "credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000).

At the same time, to instruct the jury only that it may observe Special Agent Morse's demeanor – as the Government urges – would prevent the jury from hearing that she testified under oath that she did not text when in fact she did text.  False testimony under oath is obviously impeaching.  Impeachment evidence is especially important "when it impugns the testimony of a witness who," like Special Agent Morse here, "is critical to the prosecution's case."  *U.S. v. Sedaghaty,* 728 F.3d 885, 902 (9th Cir. 2013) (citation omitted).  For such a witness, the defense must be allowed "a full and fair cross-examination."  *Id.*  This requires an opportunity "to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise him . . . ."  *Alford v. United States,* 282 U.S. 687, 692 (1931).  These authorities, based on the Confrontation Clause, compel the Court to allow the defendants to impeach Special Agent Morse by arguing that she made a false statement under oath when she denied texting.

The Government responds that her answers were not false when the full context of the Court's inquiry is considered.  At the same time, the Government recognizes that it is probably blocked from proving that context under Rule 403.  Because it cannot prove context, the Government argues that it is unfair to instruct the jury on the texts and her answers to the Court's inquiry.

**Memorandum Decision & Order – page 9**

Rule 403 does exclude evidence of context, as the Court will explain below. The Court must balance any unfairness resulting from this exclusion against the rights of the defendants under the Confrontation Clause to impeach Special Agent Morse. The Court will address these issues – Rule 403 and the balancing test – after discussing in more detail the Government's basic argument.

The Government argues that Special Agent Morse believed she was only being asked about the fourth sidebar (when she was not texting), not the third. To confirm Special Agent Morse's belief, the Government's counsel recalls that "on the morning of March 20th, the entire prosecution team – and Special Agent Morse – heard the Judge's [Law Clerk] frame the issue as one about the sidebar immediately before the break [the fourth sidebar]. Special Agent Morse's answer suggests that it was responsive to that narrow timeframe." *See Government Brief (Dkt No. 452)* at p. 4.

The Government argues that "evidence of [the Law Clerk's] statements" is necessary to provide the full context in which to judge Special Agent Morse's answers. *See Government Brief (Dkt. No. 468)* at p. 2. This context would appear to require evidence from the Law Clerk, the Government attorneys, defense counsel, (and potentially anyone else in the room when the Law Clerk framed the issue for counsel) as to what they understood from the Law Clerk's comments. This context evidence would generate a substantial trial-within-a-trial that the Government suggests would be excluded under Rule 403. Without this context, the Government argues, the jury cannot have a full understanding of how Agent Morse interpreted the Court's questions to her, so the

Court should not comment to the jury about Agent Morse's statements to the Court under oath.

The Court agrees that allowing evidence of context would create a substantial mini-trial featuring a confusing reversal of roles. Attorneys who have been zealous advocates for nine weeks would now appear under oath. The Law Clerk – who has been interacting with the jury on a daily basis for nine weeks while acting as the bailiff – would now be a witness with a role in the trial. Switching identities like this will surely confuse the jury. Moreover, the jurors would likely wonder why Special Agent Morse was not explaining what she heard from the Law Clerk.

Thus, under the Rule 403 analysis, there is a significant danger of confusing the issues and misleading the jury. In comparison, the probative value is slight. The claim that the Court's questions focused entirely on the fourth sidebar makes no sense – texting at any time on the witness stand is improper. In any event, the Court's inquiry was not so confined. At the very beginning of the inquiry, the Court framed the issue broadly to Special Agent Morse: "One of the jurors . . . commented that [she] had observed the witness 'texting' while we were at *a sidebar*." (emphasis added). At this point Special Agent Morse interjected that she was just turning off her phone. The Court then asked broadly: "And there was no texting?" When she again denied texting, the Court asked broadly once again: "But under oath, you are saying that you were not communicating using a text feature?" Nothing in the Court's questioning confined the subject to the fourth sidebar.

**Memorandum Decision & Order – page 11**

If the Government understood all along that the inquiry was supposed to be confined to the fourth sidebar, the Court's broad questions should have drawn an objection or at least a request for clarification. There was none. Indeed, the Government's recollection of the Law Clerk's statement has been somewhat unclear if not inconsistent. For example, on March 23rd (three days after Special Agent Morse took her life) the Government recalled the Law Clerk reporting the juror's concern with "texting at *a sidebar* before the second (lunchtime) break" but the Government could not "recall the 'sidebar' being identified with further specificity; nor does it recall any suggestion that multiple sidebars might be at issue." *See Government Brief (Dkt. No. 434)*(emphasis added). Thus, the Government's understanding at that time appeared to be that any one of the four sidebars before the break could be at issue. A few days later, in a brief filed March 25, 2014, the Government recalled that the Law Clerk did identify a specific sidebar – the fourth sidebar held immediately before the break – that led them all to believe the Court was only asking about that sidebar. *See Government Brief (Dkt No. 452)* at p. 4.

This inconsistency drains an already weak claim of probative value. Under the Rule 403 analysis, the probative value of the evidence is substantially outweighed by the danger that the jury will be confused and misled.

The Government is correct in its warning about this issue becoming "the most central, disputed issue in the case." Heeding that warning, the Court finds that taking testimony about context from the Court's Law Clerk and counsel must be rejected pursuant to Rule 403.

**Memorandum Decision & Order – page 12**

If the Government is precluded from proving context, is it fair to present evidence of Special Agent Morse's texting and answers to the jury and allow the defendants to argue that her answers were false? To answer this question, the Court must balance any unfairness from Rule 403's exclusion of the context evidence against the defendant's right under the Confrontation Clause to impeach Special Agent Morse.

As the discussion above shows, the unfairness of excluding the context evidence is not significant. Its strength pales in comparison to the constitutional imperative of the Confrontation Clause. As will be explained more below, the Court will be excluding additional impeachment evidence sought by the defendants so that the focus will be entirely on the facts of texting and her answers. And the Court has removed from the jury instruction any judicial comment on Special Agent Morse's veracity. These limitations distill the Confrontation Clause application in this case to its essence – focusing only on the texts and answers – and heighten its strength.

Thus, the balance favors the defendants. The Court cannot find that any unfairness from Rule 403's exclusion of context evidence compels the Court to ignore the Confrontation Clause rights of the defendants to impeach Special Agent Morse with her answers under oath.

**Defense Request to Show Content of Text Messages to Jury**

The defense asks the Court to instruct the jury about the content of the text messages. As discussed above, when Special Agent Morse's husband asks, "How is it going?", she responds, "I fu---- up once I will get reemed for it I'm sure." Her husband responds by assuring her, "They'll fix it on redirect stop worrying so much." These texts,

the defendants argue, show Special Agent Morse questioning her own testimony – in effect, they argue, she is impeaching herself.

But are the texts impeaching? What did Special Agent Morse mean? Was she too easy on the defendants or too hard? Did she fail to mention damning evidence against them, or did she exaggerate the evidence's strength? There is no answer to these questions. Any attempt by the defendants to infer some meaning would be utter speculation. Allowing that would be profoundly unfair to the Government because it has no way to explain what Special Agent Morse meant.

The real impeachment comes from her false statement under oath, and the Court is presenting that to the jury. The defendants are entitled to no more.

**Defense Request to Introduce Additional Evidence**

The defense seeks to introduce additional evidence to bolster their interpretations of the scope of the Court's inquiry of Special Agent Morse and her veracity. More specifically, defendant Douglas Swenson asks to introduce (1) testimony by Special Agent Morse's supervisor concerning his interview with her the night before her death, (2) expert testimony that her phone could be powered down without entering a password, and (3) any other impeaching evidence that might be recovered from a further examination of her phone.

These three items are of marginal relevance because they simply repeat what the Court's instruction already makes clear – Special Agent Morse gave a false answer under oath when she denied texting. The Confrontation Clause "does not bar a trial court from imposing limits on a defendant's cross-examination of a witness." *Delaware v. Van*

*Arsdall*, 475 U.S. 673, 679 (1986). Rather, trial judges have "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.*

Because the three items sought to be introduced are repetitive and only marginally relevant, the Court will exercise its authority to exclude those items based on the authorities cited above. For the same reason, the three items are excludable under Rule 403.

**Final Issue**

Finally, the Court notes that the Government's most recent filing on the issue indicates that the Court has stated that "it will not permit evidence of the [Law Clerk's] statements . . . ." *See Government Brief (Dkt. No. 468)* at p. 2 . This seems somewhat contrary to the Government's argument that a mini-trial should be avoided, and the Court recognizes that the Government has never formally moved to introduce the Law Clerk's comments. Still, this filing seems to propose a compromise jury instruction because the Court will not permit evidence of the Law Clerk's statements. To the degree the Government is making such a request, it is denied for the same Rule 403 reasons explained above.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the defendants' motion regarding impeachment (docket no. 460) is DENIED.

IT IS FURTHER ORDERED, that for the reasons explained above, the Court will give the jury the following instruction:

> I previously gave you an instruction relating to whether FBI Special Agent Rebekah Morse was texting while on the witness stand during a sidebar. You should now disregard my prior comments and my instruction on this issue.
> The Court inquired of Special Agent Morse under oath about texting during a sidebar, and she stated that she was turning off her phone and was not texting. It has now been determined that Special Agent Morse sent four text messages and received four text messages during a sidebar. The text messages were between her and her husband. You may consider these facts in assessing Special Agent Morse's credibility.

DATED: April 8, 2014

_____
B. Lynn Winmill
Chief Judge
United States District Court