UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | Case No. 1:13-CR-91-BLW |
| v. | **MEMORANDUM DECISION AND ORDER** |
| DOUGLAS L. SWENSON, et al., | |
| Defendants. | |

## INTRODUCTION

The Court has before it Defendant Douglas Swenson's Rule 41(g) Motion for Return of Seized Property (Dkt. 510) and the Government's Motion for Order Freezing Funds (Dkt. 537). The matters are fully briefed and before the Court.[1]

---

[1] In an earlier Order (Dkt. 538), the Court noted that it had received a letter from counsel for the Trustee for theDBSI Estate Ligigation Trust and the DBSI Private Actions Trust. The Court briefly reviewed the letter and determined that it appears to explain the Trustee's view on how the Court should rule on the seized assets. The Court has determined that it will not consider the letter in making its determination on what to do with the assets or in connection with the pending motions.

**Memorandum Decision & Order – page 1**

# BACKGROUND

On April 9, 2013, Chief Magistrate Judge Dale issued a seizure warrant pursuant to 21 U.S.C. § 853(f) authorizing seizure of all assets held in six accounts at TD Ameritrade, Inc. after finding probable cause that the assets to be seized were subject to forfeiture and that, absent seizure, the assets may not be available for forfeiture if Defendants were convicted. The primary basis of the probable cause finding was that Defendant Doug Swenson used the Code Six entities and accounts in his money laundering scheme. As noted in Defendant's Motion, the six accounts totaled over $1.3 million:

| | | |
|---|---|---|
| 1. | Douglas Swenson IRA | $20,211.77 |
| 2. | Ellen Swenson IRA | $20,163.65 |
| 3. | Code Six LLC | $555,003.19 |
| 4. | Code Six Trading Co. | $780,052.28 |
| 5. | David Swenson Roth IRA | $27,353.20 |
| 6. | David Swenson | $66,707.58 |

Doug Swenson was found guilty on 44 securities fraud counts and 34 wire fraud counts for total fraud proceeds of $169 million, but he was acquitted of conspiracy to commit fraud and conspiracy to launder money. Defendant specifies that the Motion is only brought in his own behalf. *Def. Mot.* at 2 n. 1. David Swenson neither joined in the Motion nor filed a separate motion for return of the money seized from the accounts in his name. Thus, the approximately $94,000 from the accounts held in the name of David Swenson do not appear to be at issue.

It is noteworthy that the Government sought forfeiture not only based on the money laundering charge but also on the fraud charges. *Superseding Indictment*, ¶¶ 224-

227 (Dkt. 21-1). The Government specifically identified the Ameritrade accounts among other assets in seeking forfeiture. *Id*. ¶¶ 225(c)(1) and 227 (incorporating by reference). It also notified Defendants that it would seek to forfeit substitute assets as to all forfeiture allegations pursuant to 21 U.S.C. § 853(p). *Id*. ¶ 228.

The Swenson Defendants' earlier attempt to dissolve the seizure warrant was denied without prejudice on July 1, 2013, after the Court found that the seizure warrant was properly issued and that the Government was not required to request a probable cause hearing under Federal Rule of Civil Procedure 65. *Mem. Dec. and Order*, Dkt. 76 (as clarified by *Order*, Dkt. 91). On August 7, 2013, Defendant Douglas Swenson filed a Request for Hearing Under Federal Rule of Criminal Procedure 41(g) (Dkt. 106) seeking return of the allegedly wrongly seized Ameritrade funds. The Court denied the motion without prejudice to renewal supported by a preliminary showing that he was entitled to lawful possession of identified accounts and a preliminary showing that the accounts were not forfeitable. *Order*, Dkt. 136. On September 26, 2013, Defendant Doug Swenson notified the Court that he did not intend to proceed with his request for a Rule 41(g) hearing. *Notice of Withdrawal*, Dkt. 150. However, following the jury verdict acquitting him of the conspiracy charges, he filed the pending Rule 41(g) motion arguing that the seized funds should be released to him because pretrial seizure of substitute assets is not permitted under Ninth Circuit law. The Government then filed its motion asking the Court to freeze the funds pursuant to the All Writs Act.

# APPLICABLE LAW

The criminal forfeiture statute applicable here is 21 U.S.C. § 853. Section 853(a) provides that upon conviction, a person shall forfeit to the United States the following property:

> (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as a result of such violation;
> (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation;

21 U.S.C. § 853(a). The forfeiture statute also provides for pretrial restraint and seizure of potentially forfeitable property if certain statutory requirements are met. 21 U.S.C. § 853(e) and § 853(f).

The Federal Rules of Criminal Procedure set forth a procedure for seeking return of seized property. Rule 41(g) provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g).

# DISCUSSION

The Supreme Court recently addressed the purpose and policy behind the federal forfeiture statute in the context of resolving an issue of pretrial restraint of a defendant's assets where the defendant sought release of the restrained funds to pay for attorney fees. *See Kaley v. United States*, 134 S.Ct. 1090 (2014). In *Kaley*, the Court provided the following insight into the law of criminal forfeiture:

> Criminal forfeitures are imposed upon conviction to confiscate assets used in or gained from certain serious crimes. See 21

> U.S.C. § 853(a). Forfeitures help to ensure that crime does not pay: They at once punish wrongdoing, deter future illegality, and "lessen the economic power" of criminal enterprises. Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 630, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989); see id., at 634, 109 S.Ct. 2646 ("Forfeiture provisions are powerful weapons in the war on crime"). The Government also uses forfeited property to recompense victims of crime, improve conditions in crime-damaged communities, and support law enforcement activities like police training. See id., at 629–630, 109 S.Ct. 2646. Accordingly, "there is a strong governmental interest in obtaining full recovery of all forfeitable assets." Id., at 631, 109 S.Ct. 2646.

*Kaley*, 134 S.Ct. at 1094 (emphasis added). The Court also noted that § 853(e)(1) furthered the policy considerations of the criminal forfeiture statute by providing for pretrial restraint of forfeitable property to ensure their availability during the pendency of the criminal proceedings even where a defendant wishes to access the restrained funds to pay an attorney. *Id*. (citation omitted). Such restraint is conditioned, however, on a probable cause showing "(1) that the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime." *Id*. at 1095 (citing § 853(a)).

Although not addressed in *Kaley*, it is apparent that the seizure provision of § 853(f) likewise furthers the governmental interest in protecting the availability of property subject to forfeiture upon conviction which in turn furthers the governmental interest in ensuring that "crime does not pay" and that victims are recompensed. So paramount are those policy considerations that a defendant may not challenge the probable cause determination underlying a pretrial restraint of assets even to obtain access to funds to pay for an attorney. *Id*. at 1100, 1105.

Here, the Court upheld the magistrate judge's probable cause determination. As indicated by the Grand Jury's indictment, at the time the seizure warrant was issued there was probable cause to believe that Defendant had engaged in money laundering. However, the posture of the case has changed since the jury returned a verdict aquiting Doug Swenson of the money laundering charge.

As described by the Ninth Circuit in *United States v. Ripinsky*, 20 F.3d 359, 363 (9th Cir. 1994), the statutory framework for the forfeiture and pre-conviction seizure of assets allows the government to seize a defendant's real or personal property involved in the underlying offense and all property traceable to such property upon conviction. 18 U.S.C. § 982 & 21 U.S.C. § 853. The Government may also restrain or seize forfeitable assets prior to conviction, but only if it appears that the defendant may otherwise transfer or conceal those assets by the time of conviction. 21 U.S.C. § 853(e) & (f). Then, if upon conviction, forfeitable assets are unreachable by the Government, the Court shall order the forfeiture of substitute assets – property of the defendant which is not traceable to, or involved in, the underlying crime. 21 U.S.C. § 853(p).

A key component to the statutory language, however, is that § 853(e) & (f) only authorizes the restraint and seizure of "property described in subsection (a) of this section" prior to conviction.[2] The property described in subsection (a) is limited to

---

[2] While § 853(f), which authorizes the pre-conviction seizure of forfeitable assets, does not contain an express reference to § 853(a), it only permits seizure "if an order under subsection (e) of this section may not be sufficient to assure the availability of the property for forfeiture. . . ." Thus, § 853(f) is subject to the same limitation as § 853(e).

forfeitable assets, i.e., "property, real or person involved in such offense, or any property traceable to such property." Subsection (a) does not mention substitute assets, which are instead defined in § 853(p).

In this case, Magistrate Judge Dale properly concluded, and I affirmed, that the funds in question were properly traceable to the money laundering count – the Grand Jury's indictment on that count established probable cause, and the other requirements of 21 U.S.C. § 853(e) were satisfied. Therefore, the assets were properly restrained under the statute prior to trial. However, the situation changed after (1) the Jury acquitted Doug Swenson on the money laundering count, and (2) the Government conceded that it could not trace the assets in question to the fraud counts on which Doug Swenson was convicted. At that point the factual predicate for the pre-conviction seizure disappeared. That is, the assets were no longer property "involved" in a crime properly seizable under § 853(e) & (f), but could only be regarded as substitute assets under § 853(p), which are not subject to pre-conviction seizure. While the Grand Jury's indictment established probable cause for the money laundering count, that finding of probable cause had no continuing legal significance once the jury acquitted Doug Swenson on that count. In essence, the Petit Jury's acquittal trumped the Grand Jury's finding of probable cause. Accordingly, the original statutory basis for the Government's retention of the assets no longer exists.

However, the Mandatory Victims Restitution Act of 1996 authorizes the Government to enforce a restitution order by all "available and reasonable means." 18 U.S.C. § 3664(m)(1)(A)(ii). This includes writs issued pursuant to the All Writs Act. The

**Memorandum Decision & Order – page 7**

All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651 (a).

Several courts have concluded that the All Writs Act allows a court to restrain a convicted defendant's property in anticipation of ordering restitution. *See e.g., U.S. v. Catoggio*, 698 F.3d 64, 67 (2nd Cir. 2012) and cases cited therein. In reaching this conclusion, at least one court indicated that "'there is no logic to the position that the Court is powerless to enter a restraining order after a jury has found a defendant guilty of participating in a large-scale fraud simply because sentencing has been delayed.'" *Id.* at 68 (citing *U.S. v. Numisgroup Int'l Corp.*, 169 F.Supp.2d 133, 138 (E.D.N.Y. 2001). This is particularly true where, as here, the defendant likely does not have the assets necessary to satisfy the anticipated order of restitution.

The delay between a jury's verdict convicting a defendant and the defendant's sentencing hearing is necessary for the Court to be fully informed when it imposes sentence. The delay should not be an opportunity for a defendant to frustrate the sentencing by disposing of assets. Returning the money to the defendant in this case would do just that. Again, there is no logic to such an approach.

As for defense counsel's argument that the Court's refusal to return the funds violates the defendant's right to counsel of his choice, the Supreme Court has said otherwise. *U.S. v. Monsanto*, 491 U.S. 600 (1989). Accordingly, the Court will deny Doug Swenson's moiton and grant the Government's motion.

**Memorandum Decision & Order – page 8**

# ORDER

**IT IS ORDERED:**

1. Defendant Douglas L. Swenson's Rule 41(g) Motion for Return of Seized Property (Dkt. 510) is **DENIED**.

2. The Government's Motion for Order Freezing Funds (Dkt. 537) is **GRANTED**.

DATED: June 3, 2014

B. Lynn Winmill
Chief Judge
United States District Court