UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DOUGLAS L. SWENSON, *et. al*,<br><br>　　　　Defendants. | Case No. 1:13-cr-00091-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it Defendant Douglas L. Swenson's Motion for Release Pending Appeal (Dkt. 761). Doug Swenson's co-defendants filed similar motions several weeks ago, which the Court denied. For the reasons explained below, the Court will deny Doug Swenson's motion as well.

## ANALYSIS

To be released pending appeal, a defendant must demonstrate that he meets certain statutory requirements: (1) that he does not pose a flight risk or danger to the community[1]; (2) that the appeal is not for purposes of delay; and (3) that the appeal raises

---

[1] There has been no assertion or argument that Swenson is a danger to the community, and the Court has no reason to believe he is. Accordingly, the Court will not address that issue in any detail, and simply find that he is not a danger to society.

a substantial question of law that is likely to result in reversal, an order for new trial, a sentence of no imprisonment, or a sentence reduced to a term of imprisonment less than the time expected for the duration of the appeal. 18 U.S.C. § 3143(b); *see also U.S. v. Handy*, 761 F.2d 1479 (9th Cir. 1985). The defendant bears the burden to overcome the presumption that he should be detained while his appeal is pending. *United States v. Montoya*, 908 F.2d 450, 451 (9th Cir. 1990).

1. **Flight Risk**

Swenson has the burden to show by clear and convincing evidence that he is not a flight risk. 18 U.S.C. § 3143(b)(1)(A). The Government suggests Swenson has not met that burden because he is a 66-year-old man facing 240 months of prison, has been ordered to forfeit a massive sum of money, and as illustrated by the outcome of the trial has regularly engaged in calculated dishonesty and deceit for his own personal gain. The Government therefor suggests Swenson has every reason to flee.

The Court agrees that generally once a defendant has been convicted and sentenced to a long term of imprisonment, especially a defendant in his mid-60s, he has more reason to flee than he did during trial or before sentencing. However, the Court still finds that Swenson has met his burden of showing that he is not a flight risk. Notwithstanding the general assumption that someone in his position may want to flee, Swenson has significant ties to his community, has never missed a court appearance, and has no previous convictions. Moreover, based upon post-trial motions and other issues raised during trial, it seems clear to the Court that Swenson appears to believe he has

hope in his appeal, which could be seriously disrupted if he fled. Accordingly, the Court finds that Swenson has met his burden of showing by clear and convincing evidence that he is not a flight risk.

2. **Delay**

Swenson has the burden of showing that he is appealing his conviction for purposes other than delay. Swenson does have a history of attempting to delay post-trial proceedings as the Government suggests. He delayed the forfeiture hearing because apparently neither of his attorneys were available for an earlier hearing, he asked to self-surrender beyond the typical 4-6 week reporting window (the Court granted that request), he sought a significant delay in the middle of the forfeiture hearing, and he asked the Court to stay all post-trial proceedings pending his interlocutory appeal on a meritless issue which the Ninth Circuit summarily denied. Significantly and somewhat gallingly, Swenson also waited almost a month after his sentencing to file his pending motion for release pending appeal – which contained an overlength brief – and requested that either the matter be fully briefed and decided by the Court within one week or that the Court grant him a 30-day extension on his report date. Although any one of these events, by itself, may not suggest Swenson sought to delay the proceedings, taken together they show a consistent theme of delay tactics.

But Swenson's delay tactics suggest he was trying to delay his sentencing and his report date, not that he filed his appeal for purposes of delay. As the Court noted above, Swenson appears to believe he has hope in his appeal, and the issues he intends to raise in

his appeal are not merely frivolous. Accordingly, Swenson has met his burden of showing he is appealing his conviction for purposes other than delay.

3.  **Substantial Questions of Law or Fact**

As the Court explained in its Order denying Swenson's co-defendants' motions for release pending appeal, the Ninth Circuit has determined that "the word 'substantial' defines the level of merit required in the question raised on appeal, while the phrase 'likely to result in reversal' defines the type of question that must be presented." *United States v. Handy*, 761 F.2d 1279, 1280–81 (9th Cir. 1985). A substantial question "is one that is fairly debatable, or fairly doubtful. In short, a substantial question is one of more substance than would be necessary to a finding that it was not frivolous." *Handy*, 761 F.2d at 1283; *see also United States v. Montoya*, 908 F.2d 450, 450 (9th Cir.1990).

Swenson identifies seven issues he intends to present on appeal, but his briefing only discusses four of those issues. The Court will address the argument on the four main issues below.

   A.  **Improper Vouching and Curative Instruction**

Swenson intends to argue on appeal that the Court improperly vouched for a government witness, Agent Morse, and failed to give a proper curative instruction. The background on this issue, and the Court's curative instruction and the reasons for giving it, are set forth in detail in an earlier Memorandum Decision and Order. See Dkt. 496. The Court will not repeat all that information here.

Instead the Court will note that it relayed to the jury information it obtained outside the presence of the jury from Agent Morse about not texting on the witness stand, without objection from the defendants. Later, when the Court determined that it needed to correct its earlier instruction about what it had learned from Agent Morse outside the presence of the jury, the Court specifically told the jury to disregard its earlier instruction, instructed them about Agent Morse texting while on the witness stand, and told them they could consider these facts in assessing Agent Morse's credibility. Moreover, at the close of evidence, the Court instructed the jury that they were the judges of the facts, and that they should decide which testimony to believe and which not to believe, including whether to believe a witness. Specifically, the Court gave the jury Ninth Circuit model jury instructions 3.1 and 3.9, which address the jury's duty to find facts and follow law, and the credibility of witnesses. Thus, there is no substantial question raised by the Court's comments or curative instruction which would lead to reversal or a new trial.

Swenson also argues that it was error for the Court to exclude the transcript of Agent Morse's responses to the Court, her cellphone log, and other evidence about the operation of her phone and its contents. This ruling likewise does not raise a substantial question. Admission of such evidence was substantially outweighed by unfair prejudice and confusion. These items were of such marginal relevance, if any, because they simply repeated what the Court's curative instruction already made clear – that Agent Morse gave a false answer under oath when she denied texting. Trial judges have "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such

cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. VanArsdall*, 475 U.S 673, 679 (1986). Thus, the evidence was properly excludable under Rule 403. Accordingly, the Court provided the jury with the appropriate cautionary and curative instruction, and Swenson has not raised a substantial question about the Court's evidentiary ruling which is likely to result in reversal or a new trial.

    B.    **Rule 16**

Swenson intends to appeal the Court's Rule 16 ruling. Swenson raises nothing more than has already been discussed numerous times pre-trial, during trial, and post-trial, and clarified in detail in one of the Court's earlier decisions. Likewise, the issue was raised by his co-defendants and rejected by the Court on their motions for release pending appeal. Accordingly, the Court will essentially repeat what it said in denying his co-defendants' motions for release pending appeal.

Rule 16 provides for a defendant's disclosure of documents and objects by stating that if a defendant requests disclosure under Rule 16(a)(1)(E), and the government complies with that request, the defendant must disclose items within his possession, custody, or control if he wants to use them in his case-in-chief. Fed. R. Crim. P. 16(b)(1)(A). A defendant's failure to comply with discovery obligations may result in exclusion of the undisclosed evidence. Fed. R. Crim. P. 16(d)(2)(C). See also *U. S. v. Sholl*, 166 F.3d 964, 972 (9th Cir. 1999); *U. S. v. Aceves-Rosales*, 832 F.2d 1155, 1156-

57 (9th Cir. 1987). During trial, the Court agreed with the holding in *U.S. v. Hsia*, 2000 WL 195067 (D.C. Cir. Jan. 21, 2000) as to what constitutes a defendant's case-in-chief. *Hsia* found that if the prerequisites of Rule 16(b)(1)(A) are satisfied, defendants have a duty to produce any exhibits they intend to use at trial during cross examination of a government witness other than for impeachment purposes. U.S. v. *Hsia*, 2000 WL 195067 (D.C. Cir. Jan. 21, 2000). The Court applied that standard during trial.

The Court recognizes that Swenson intends to appeal that ruling, but he has not provided the Court with case law contrary to the holding in *Hsia* or suggesting that the Court otherwise misapplied Rule 16 here. Accordingly, the Court is not persuaded that an appeal of this issue raises a substantial question of law that is likely to result in reversal or an order for a new trial.

### C. Closed Proceedings

Under the First Amendment, court proceedings and records in both criminal and civil proceedings are presumptively open to the public. *Perry v. City and County of San Francisco*, 2011 WL 2419868 (9th Cir. April 27, 2011) *see also Waller v. Georgia*, 467 U.S. 39, 45-46 (1984). But the right to an open hearing "may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller*, 467 at 45. Before a court may enter a sealing order it must make "specific, on-the-record findings of the extraordinary need to keep a particular document or particular testimony secret." *Perry* at *21. "[P]articularized findings of compelling interest must be placed on the record before

a hearing is closed or a record is sealed" to assure that the court carefully analyzes the issue before removing records from the public view. *Id*. (citations omitted). These findings must be "specific enough that a reviewing court can determine whether the closure order was properly entered." *Id*. (citations omitted).

Swenson intends to argue on appeal that his Sixth Amendment right to a public trial was violated because the Court closed the courtroom on two occasions. The Court will address each instance below.

### (1) Evidentiary Hearing

First, Swenson points to the closure of the courtroom during a pretrial evidentiary hearing. As explained in an earlier Order by the Court, the Court conducted an evidentiary hearing regarding the destruction of potential evidence by IRS Revenue Agent Rachel Martinen. During the hearing defense counsel gave a proffer that Martinen's testimony about destroying evidence would be affected by her interactions with one of the lead IRS agents on this case – specifically proffering that Martinen would testify that she was afraid for her life because of the agent, that she was breaking into tears because of how the agent treated her, that she witnessed illegal behavior related to weapons and the agent, and that she was sexually harassed by the agent. The Court determined that these serious allegations of misconduct by an IRS agent should not be made public unless and until they were substantiated. Therefore, the Court allowed defense counsel to explore the allegations in a closed proceeding with an understanding that it may unseal the testimony upon a request to do so.

As explained in detail in the Court's earlier Order unsealing the transcript, during the closed portion of the hearing defense counsel questioned Martinen about the alleged misconduct. In response, Martinen denied being sexually harassed; clarifying that she felt she was treated in a "sexist" manner and not as an equal. When asked about fearing for her safety, she mentioned three events. First, she testified that the agent took a picture with his cell phone of Martinen sighting in one of his rifles he had brought to the office. Second, she testified that the agent once told her that he knew a guy who worked for the Treasury Inspector General for Tax Administration (TIGTA), and that if she ever had trouble with anybody, he would have them taken care of. She suggested that she was then investigated by TIGTA as retaliation for being removed from this case. Third, she testified that the agent used his badge for personal benefit related to school registration for his children. Martinen then testified that TIGTA informed her that they were closing the investigation into her allegations against the agent "for her safety." She indicated that TIGTA said she could request the investigation start over, but she chose not to because she believed it would not go anywhere. Ultimately, Martinen testified that during her interview with TIGTA in June 2012, she was concerned that the agent would retaliate against her, that he had a bad temper, and that he could influence the actions TIGTA could take against her.

Under these circumstances, the Court decided to unseal the transcript of the closed portion of the hearing, noting that although Martinen's testimony about the agent did not necessarily correspond to all the allegations made by defense counsel in their proffer –

which justified the Court's initial closure of the hearing – she did acknowledge that she feared for her life. The Court explained that some of Martinen's testimony did not make much sense, such as her suggestion that TIGTA closed an investigation out of fear for Martinen's safety, but reasoned that although the allegations may be somewhat distressing to the IRS agent, they ultimately were not so sensitive that they outweighed the strong presumption of public access to the courts.

Under *Waller*, the Court made the necessary findings for the short courtroom closure. The Court found an overriding interest that was likely to prejudice the Government had the courtroom remained open. *Waller*, 467 U.S. at 48. That interest was in protecting a government agent against unsubstantiated allegations of misconduct, which at the time he was not aware of nor given an opportunity to respond to, and which to at least some degree the witness' testimony failed to substantiate defense counsel's proffer. Moreover, the Court closed the courtroom for only a small fraction of the hearing, and there was no reasonable alternative to closing the courtroom. *Waller*, 467 U.S. at 48. Thus, the Court balanced the sensitivity and unsubstantiated allegations concerning the IRS agent against the presumption of an open courtroom. Finally, the Court unsealed the transcript of the closed portion of the hearing once it recognized that the testimony did not reach the level of sensitivity suggested by defense counsel's proffer.

Under these circumstances, Swenson has not shown that the brief closure, even if in error, is "likely to result in reversal, an order for a new trial, a sentence that does not

include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1). Swenson has not provided the Court with any case where a jury verdict was overturned and a new trial ordered because the courtroom was closed for a brief time during a pre-trial hearing to determine whether defense counsel's proffer could be substantiated, and where the transcript of the closed portion of that hearing was ultimately unsealed. Accordingly, Swenson has not met his burden.

### (2) March 20, 2014 Closure

The courtroom was also closed, without objection from any defendant, on March 20, 2014, when the parties discussed how to proceed with possible questioning of Agent Morse regarding her responses to questions about texting. During the closed hearing, the jury was not present, and no evidence was presented. The hearing was not unlike several telephonic conferences in this case where the Court and counsel discussed only procedural matters, and to which Swenson never objected and even requested through his counsel at times. Closing the courtroom for these brief hearings about procedural matters does not raise substantial questions likely to result in reversal or a new trial.

### D. Government Closing Argument

Swenson argues it was reversible error to allow the prosecutor to make a statement during closing argument regarding the defendants' ability to call witnesses. Swenson raised this issue in a post-trial motion for new trial, and he makes no new arguments here. As explained by the Court in its Order denying that post-trial motion, during their closing

arguments counsel for each of the four defendants referred to witnesses the government did not call at trial. In rebuttal, government counsel stated the following,

> Additionally, you heard each defense counsel in their closing statement ask why the government didn't call this witness or that witness or that witness. The government does not need to bring in every single DBSI employee, every single broker-dealer, every single financial advisor, every single due diligence officer, every single investor for you to know that fraud occurred.
> You've heard nine weeks of evidence in this case. You don't need to hear nine weeks worth of evidence more to know there was a fraud. And even if you did, defense counsel could, of course, still point to people that weren't brought in.
> And I want to make something clear. The government has the burden of proof in this case, and that doesn't shift. The defense has no burden to call witnesses or put in evidence. But, like the government through this court, they have the same subpoena power to call witnesses. The defense can also compel almost anybody from almost anywhere to come here and testify on their behalf. They could have subpoenaed Bryan Mick and called him to the stand. They could have subpoenaed Paris Cole and called him to the stand. They could have subpoenaed Paul Judge and called him to the stand.
> So when they ask why the government didn't call these witnesses to the stand, just know that they could have called those same witnesses to the stand. They had that ability.
> Who did they call? Josh Hoffman. Now, the defendants point to Josh Hoffman as proof of disclosure. The same Josh Hoffman who recommended that the master lease language that it was losing money be taken out, the same Josh Hoffman who was up there saying that a company losing money is important but he recommended that the financials not come out because it wouldn't look good, the same Josh Hoffman who was impeached with his prior statements under oath at FINRA five years ago over and over and over again. Calling Josh Hoffman, ladies and gentlemen, just cemented what you already knew, the obvious -- that the scheme that these four defendants operated wasn't disclosed. Not even the director of sales operations now about this. That couldn't -- that was not a surprise because his boss Merriah Harkins who you heard from didn't know about this. And the wholesalers who were working with the broker-dealers didn't know about this. And, of course, investors didn't know about this.

Trial Tr. at 7159, line 14 - pg. 7161, line 5, April 9, 2014.

As the Court explained in its earlier Order, Ninth Circuit law makes clear that "[a] prosecutor's comment on a defendant's failure to call a witness does not shift the burden of proof, and is therefore permissible, so long as the prosecutor does not violate the defendant's Fifth Amendment rights by commenting on the defendant's failure to testify." *U.S. v. Cabrera*, 201 F.3d 1243, 1250 (9th Cir. 2000) (*citing U.S. v. Williams*, 990 F.2d 507, 510 (9th Cir.1993). "Additionally, where the defendant opens the door to an argument, it is 'fair advocacy' for the prosecution to enter." *U.S. v. Williams*, 990 F.2d 507, 510 (9th Cir.1993) (*quoting U.S. v. Falsia*, 724 F.2d 1339, 1342 (9th Cir.1983). "A prosecutor may properly reply to the arguments made by defense counsel, so long as the comment is not manifestly intended to call attention to the defendant's failure to testify." *Id.* (*quoting U.S. v. Bagley*, 772 F.2d 482, 494 (9th Cir.1985). Thus, where defense counsel argue that the government's decision not to call a witness is evidence of some weakness in the government's case, the defense opens the door to the issue of the uncalled witness and the government may respond by pointing out that defense counsel also could have called the witness. *Id*.

Defense counsel opened the door to uncalled witnesses in this case. The prosecutor did not comment on any defendant's failure to testify, and both the Court and the prosecutor reminded the jury that the government bore the burden of proof. Accordingly, Swenson has not met his burden of showing that an appeal of this issue raises a substantial question of law that is likely to result in reversal or an order for a new trial.

## ORDER

**IT IS ORDERED:**

1. Douglas L. Swenson's Motion for Release Pending Appeal (Dkt. 761) is **DENIED**.

DATED: October 14, 2014

B. Lynn Winmill
Chief Judge
United States District Court